**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PEDRO JUAN TAVARES,  :
                                        :    Civil Action No. 04-0302 (WHW)
         Petitioner,  :
                                        :
         v.  :    **OPINION**
                                        :
CHARLES MEYERS, Warden, et al., :
                                        :
         Respondents.  :

**APPEARANCES:**

Petitioner pro se
Pedro Juan Tavares
2538 Hering Ave. 2nd Floor
Bronx, NY 10469

Counsel for Respondents
Colette R. Buchanan, Esq.
Asst. U.S. Attorney
970 Broad Street
Room 700
Newark, NJ 07102

**WALLS**, District Judge

    Petitioner Pedro Juan Tavares, an alien formerly confined at the Passaic County Jail, brought this Petition pursuant to 28 U.S.C. § 2241[1] challenging his final order of removal and seeking

---

[1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
    (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

release.[2] By Order entered August 29, 2005, Judge Katharine S. Hayden of this Court consolidated with this action a separate civil rights action docketed as Tavares v. Immigration and Naturalization Service,[3] Civil Action No. 05-2569, which Petitioner sought to bring in forma pauperis[4] pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), alleging violations of his constitutional rights.

At this time, the Court must review the civil rights claims asserted in the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A to determine whether they should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who

---

[2] By Order [18] entered October 11, 2005, this Court severed and transferred to the U.S. Court of Appeals for the Second Circuit, pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005), Petitioner's substantive challenge to the final order of removal, but retained jurisdiction over Petitioner's challenge to his pending detention.

[3] The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, transferred the immigration enforcement functions of the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service ("INS")) to the Secretary of Homeland Security. As of March 1, 2003, the INS ceased to exist and its functions were transferred to the Department of Homeland Security. The former INS's enforcement, detention, and removal functions are within the responsibility of the Bureau of Immigration and Customs Enforcement. For the sake of convenience, the Court will continue to refer to the INS in this Opinion.

[4] This Court has already entered an Order [4] granting Petitioner leave to proceed in forma pauperis.

is immune from such relief. For the reasons set forth below, the Court concludes that the civil rights Complaint fails to state a claim. In addition, the habeas petition must be dismissed as moot.

I. BACKGROUND

The following factual allegations are taken from Petitioner's Complaint and other filings and are accepted as true for purposes of this review.

Petitioner is a native and citizen of the Dominican Republic. He entered the United States as a lawful permanent resident in 1967. In 1979, Petitioner was convicted in the State of New York of the criminal sale of a controlled substance in the second degree. In 1980, Petitioner was placed in deportation proceedings pursuant to an Order to Show Cause. Petitioner went to court on the day set, but was told by the court clerk to go home because the paperwork was not ready. Petitioner never received any further instructions or information.

In September 1993, Petitioner went back to immigration authorities to enquire about the status of his proceeding, but again heard nothing further.

In 1996, coming from the Dominican Republic, Petitioner was detained at the airport because immigration authorities believed he was traveling with the documents of a dead person. Apparently, the INS erroneously had listed Petitioner in its

3

records as deceased. Petitioner's immigration proceedings were reinstated and, in September of 1996, Petitioner was granted a 212(c) waiver by the Immigration Judge. The INS appealed and, on September 2, 2002, the case was sent back to the Immigration Judge for a new hearing.

Meanwhile, on January 11, 2000, Petitioner was convicted of an aggravated felony, conspiracy to distribute and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1), in the U.S. District Court for the District of Massachusetts. Petitioner was sentenced to a term of imprisonment of 60 months. When Petitioner was released by the Bureau of Prisons on September 13, 2002, his removal proceeding was pending before an Immigration Judge and he was taken into custody by immigration authorities pursuant to the mandatory pre-removal detention provision of 8 U.S.C. § 1226(c).

Petitioner requested a Joseph[5] hearing to determine whether he was subject to the mandatory detention provision of § 1226(c). Petitioner alleges that he never received the Joseph hearing. On October 31, 2002, the IJ again granted the petitioner a § 212(c)

---

[5] Pursuant to In re Joseph, 22 I.&N. Dec. 799 (BIA 1999), before the conclusion of a removal proceeding, an IJ may make a determination whether the alien is properly included in a mandatory detention category. In this context, a lawful permanent resident will not be considered properly included in a mandatory detention category only when an IJ is convinced that the INS is "substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory detention."

4

waiver. The INS appealed the decision to the Bureau of Immigration Appeals. Petitioner alleges that he never got notice of the appeal. Subsequently, the INS filed a motion to withdraw their appeal and have the case remanded to the IJ for consideration of Petitioner's 2000 conviction for heroin distribution. On October 28, 2003, the BIA granted the motion.

On December 23, 2003, based on the evidence of Petitioner's 2000 conviction, the IJ denied his request for a § 212(c) waiver, noting that no such waiver was available under the law for a controlled substance conviction that took place in 2000. The IJ ordered Petitioner deported to the Dominican Republic. Petitioner appealed the IJ's decision to the BIA. On March 31, 2004, the BIA affirmed the IJ's decision and dismissed the appeal. Thus, when the order of removal became administratively final, Petitioner was detained pursuant to the mandatory post-removal order detention provision, 8 U.S.C. § 1231.

In the habeas Petition, Petitioner claims that his post-removal order detention is unlawful and he seeks release. On March 27, 2006, this Court received a letter [26] from Petitioner stating that he had been released from detention on supervised release as of March 16, 2006. Thus, the habeas claim is moot and will be dismissed.

With respect to the civil rights claims, Petitioner alleges that the defendants, the Immigration and Naturalization Service

5

and former Attorney General John Ashcroft, (a) failed properly to investigate his petition for naturalization in 1976, (b) wrongfully failed to proceed with his immigration proceedings in 1983, (c) falsely reported his death in 1993, (d) delayed his immigration proceedings for six years been 1996 and 2002, and (e) wrongfully kept Petitioner in mandatory pre-removal-order detention without granting Petitioner a <u>Joseph</u> hearing in 2002 and 2003.  To the extent he asserts these claims as challenges to his removal order, that challenge has already been severed and transferred to the U.S. Court of Appeals for the Second Circuit. Petitioner must assert any further challenge to the removal order in that transferred action.  To the extent he seeks damages or other relief, he fails to state a claim.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

Prior to docketing or as soon as practicable after docketing, this Court must review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental entity or employee.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B), 1915A.  The Court must identify cognizable claims, and must dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. <u>Id</u>.  <u>See also</u> 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez,

7

504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. ANALYSIS

The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, Petitioner cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994),[6] or against an individual defendant in his official capacity, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government). With very limited exceptions, the Federal Employees Liability Reform and Tort Compensation Act ("Liability Reform Act"), 28 U.S.C. § 2679, immunizes federal employees from liability if they commit negligent or wrongful acts or omissions while acting within the scope of their office or employment. This general rule that

---

[6] This Court has located no such waiver with respect to the INS or its successors the Department of Homeland Security or the Bureau of Immigration and Customs Enforcement, and Petitioner has not directed this Court to any such waiver.

8

federal officers are not liable for conduct arising within the scope of their employment "does not extend or apply to a civil action against an employee of the Government--(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2). This immunity applies even where federal law does not otherwise provide a remedy against the United States. See U.S. v. Smith, 499 U.S. 160, 166 (1991).

Thus, for most such claims, the exclusive remedy is an action against the United States,[7] itself, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., which represents a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1). The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

---

[7] Upon certification by the Attorney General that an employee was acting within the scope of employment, the United States is substituted as a defendant. 28 U.S.C. § 2679(d)(1).

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz, 374 U.S. 150 (1963).

Taking these provisions into account, Petitioner can proceed against former Attorney General John Ashcroft here only if (1) one of the exceptions to individual immunity contained in § 2679(b)(2) applies or (2) the claim is otherwise valid against the United States pursuant to the Federal Tort Claims Act.

The exception under § 2679(b)(2)(A) for claims arising directly under the Constitution relates to claims permitted by Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). In Bivens, the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979). The Court of Appeals for the Third Circuit has implied a Bivens-type remedy under the First Amendment to redress alleged retaliation by prison officials against a prisoner who had exercised his right of access to the courts by initiating a civil rights action against prison officials. See Milhouse v.

Carlson, 652 F.2d 371 (3d Cir. 1981). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988)).

Here, Petitioner has failed to allege any conduct by the Attorney General that would give rise to a damages remedy under any of the traditionally-recognized Bivens-type actions. To the extent such a damages remedy could be implied, for deprivation of liberty without due process arising out of the pre-removal-order detention of an alien, the complaint fails to state a claim."

---

" All other potential Bivens claims are time-barred. A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985) (re: § 1983 action); VanStrum v. Lawn, 940 F.2d 406 (9th Cir. 1991) (limitations period applicable to § 1983 actions pursuant to Wilson also applicable to Bivens actions); Bieneman v. City of Chicago, 864 F.2d 463, 469 (7th Cir. 1988) (same), cert. denied, 490 U.S. 1080 (1989); Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987) (same); Drum v. Nasuti, 648 F.Supp. 888, 902-03 (E.D. Pa. 1986) (same), aff'd 831 F.2d 286 (3d Cir. 1987)(table); Upper v. United States Gov't, 1994 WL 660738, *4 (D.N.J. Aug. 11, 1994) (same). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Petitioner's Bivens claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25

11

Pursuant to 8 U.S.C. § 1226(c), Petitioner concedes that immigration authorities properly took him into custody upon his release from prison. To the extent Petitioner contends that his detention subsequently became unconstitutional either because of the failure to provide a Joseph hearing or because of the duration of the detention, he also fails to state a claim.

Under 8 U.S.C. § 1226(c), the Attorney General is required to detain certain deportable aliens, including those who have been convicted of an aggravated felony or of violating a state law relating to a controlled substance. Although § 1226(c) does not provide for bail, an alien detained pursuant to § 1226(c) may move for a Joseph hearing to determine if he falls within the categories of aliens subject to mandatory detention. In re Joseph, 22 I.&N. Dec. 799 (BIA 1999).[9] In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court considered whether mandatory pre-removal-order detention under § 1226(c) violates due process. In the case of an alien who conceded that he fell within the

---

(3d Cir. 1989).

All claims except the pre-removal-order detention claim accrued more than two years before Petitioner submitted his Complaint. Petitioner has alleged no facts suggesting any basis for statutory or equitable tolling. Accordingly, those claims are time-barred.

[9] At the Joseph hearing, a detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the BICE is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. See 8 C.F.R. § 3.19(h)(2)(ii).

categories of deportable aliens subject to mandatory detention under § 1226(c), the Supreme Court found that detention of deportable criminal aliens pending their removal proceedings did not violate due process. 538 U.S. at 531. The Court noted that such proceedings typically last only a few months and, in contrast to the potentially indefinite post-removal period detention rejected in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), pre-removal-order detention has a finite termination point. 538 U.S. at 529-530.

In his concurrence, Justice Kennedy took the position that circumstances could arise in which long-term pre-removal-order detention might violate due process.

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien ... could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. ... Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. That is not a proper inference, however, either from the statutory scheme itself or from the circumstances of this case.

538 U.S. at 532-33 (Kennedy, J., concurring).

Here, Petitioner appears to allege both that he should have received a <u>Joseph</u> hearing to contest his mandatory detention and that his mandatory detention was so lengthy, because of INS delays, that it violated due process. Petitioner, however, fails

13

even to allege that he does not fall within the categories of criminal aliens subject to mandatory pre-removal detention. He concedes that he committed an aggravated felony and challenges his removability on altogether different grounds. Cf. Demore, 538 U.S. at 522 n.6 ("Lest there be any confusion, we emphasize that by conceding he is 'deportable' and, hence, subject to mandatory detention under § 1226(c), respondent did not concede that he will ultimately be deported."). As Petitioner concedes that he is a criminal alien subject to the mandatory detention provision of § 1226(c), he suffered no deprivation of liberty by the failure to provide a Joseph hearing.

Petitioner's pre-removal-order detention lasted from September 13, 2002, when he was initially taken into custody to March 31, 2004, when the BIA affirmed the order of removal. During that 18-month period the following proceedings ensued: an IJ granted a § 212(c) waiver, which the INS appealed, the INS dropped its appeal and requested remand for consideration of Petitioner's 2000 conviction, a second IJ hearing resulted in an order of removal, Petitioner appealed that order, and the BIA affirmed. While the 18-month pre-removal-order detention period certainly exceeded the length of the typical such detention, the facts as pleaded do not suggest that the INS unreasonably delayed the proceedings to the point that Petitioner was deprived of liberty without due process. To the contrary, the proceedings

14

lasted 18 months because they involved two rounds of IJ decisions and appeals. Petitioner has failed to state a claim under Bivens.

Finally, a Bivens-type claim for monetary damages is not available against the United States or federal agencies. See FDIC v. Meyer, 510 U.S. 471, 484-87 (1994). Thus, Petitioner cannot proceed against the INS or its successor the Department of Homeland Security under Bivens, even if a claim could be implied based upon the facts alleged.

Nor does the exception under § 2679(b)(2)(B) for "violation of a statute of the United States under which such action against an individual is otherwise authorized" apply in the circumstances of this case. Thus, Petitioner has failed to state a claim against former Attorney General John Ashcroft under an exception to the Liability Reform Act.

Nor can Petitioner's claims proceed under the Federal Tort Claims Act at this time. The Federal Tort Claims Act ("FTCA") is a limited waiver of the sovereign immunity of the United States and provides, generally, that the United States shall be liable, to the same extent as a private party, "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); see 28 U.S.C. § 2674. Assuming that an FTCA claim would otherwise be viable, a

15

district court nevertheless lacks jurisdiction over an FTCA claim until the claimant has exhausted administrative remedies. See McNeil v. United States, 508 U.S. 106 (1993); Deutsch, 67 F.3d at 1091.

> An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Moreover, a claim under the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).

Here, according to the allegations of his Complaint, all of Petitioner's claims except the pre-removal-order detention claim, accrued more than two years before he signed his complaint on May 15, 2005.[10] Thus, all claims except the pre-removal-order

---

[10] A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action." Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994) (quoting Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982)). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

16

detention claim must be dismissed for lack of jurisdiction, based upon Petitioner's failure to comply with the FTCA exhaustion requirement prior to filing this Complaint.

With respect to the pre-removal-order detention claim, the FTCA requires the commission of a tort to impose liability. <u>Goldstar (Panama) S.A. v. United States</u>, 967 F.2d 965, 969 (4th Cir. 1992) ("While the FTCA waives sovereign immunity for actions alleging torts by employees of the Government, it does not create novel causes of action.  Thus, the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government.").  Assuming that Petitioner has otherwise pleaded the common-law tort of false imprisonment as it is actionable in New Jersey, the FTCA waiver of sovereign immunity, nevertheless, does not apply here.

The FTCA waiver of sovereign immunity does not apply to certain types of torts, as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to-
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
> ...
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation,

17

> deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."[11]
>
> . . . .

28 U.S.C. § 2680. Any claim based upon an intentional tort described in § 2680(h) must first clear the hurdle of § 2680(a). See Medina v. United States, 259 F.3d 220 (4th Cir. 2001).

The point of the "due care" exception of § 2680(a) is "to preclude testing the legality of a statute or regulation by a tort action." See Stewart v. United States, 486 F.Supp. 178, 181 (C.D. Ill. 1980); see also H.R.Rep. No. 101-1015, at 134-36 (1991) ("Nor is it desirable or intended that the constitutionality of legislation or the legality of a rule or regulation should be tested through the medium of a damage suit for tort." (quoting H.R.Rep. No. 2245, 77th Cong., 2d Sess., at 10 (1942))). Thus, during the time the Defendants detained Petitioner pursuant to a mandatory detention provision of the

---

[11] Immigration officers meet the definition of investigative or law enforcement officers. See Medina v. United States, 259 F.3d 220 (4th Cir. 2001); Cabaan v. United States, 728 F.2d 68, 72 (2d Cir. 1984). See also 8 U.S.C. § 1357 (powers of immigration officers).

Immigration and Nationality Act, the "due care" exception of § 2680(a) shields them from tort liability.

Nor can any FTCA claim be premised on the failure to provide a _Joseph_ hearing, as Petitioner has conceded that he fell within the categories of aliens subject to mandatory pre-removal-order detention.

## IV. CONCLUSION

For the reasons set forth above, the habeas claim and the civil rights claims will be dismissed. It does not appear that Petitioner would be able to cure the defects in his Complaint by amendment at this time. An appropriate order follows.

s/William H. Walls
United States District Judge

Dated: 6/8/06